Good morning. I represent Bihari, Mr. Hossian, and I have to say that the Biharis are very unfortunate people. With respect to their asylum... Because you're representing them. Well, you'll decide that later, Your Honor, and I hope not. No, no, but that's fair. Because I represent them and they're very unfortunate. I'm sure they're not unfortunate I'm hoping that I could, in the most minimum way, help their fortune. I don't know if I can. I've looked at the cases that are reported regarding the Biharis, and there are very few cases, none that were published, that I could find. I have submitted to the court one case from the circuit in 2005 where the case was remanded for purposes of the board determining whether or not... The Nassarullah? Yes, whether or not there was private persecution. The other cases that have been cited by the government, submitted by the government, and otherwise, have not favored the Biharis, which I have to confess, having practiced immigration law for 25 years, is a big pathway, given their circumstances. Well, can you help us by elucidating from the record anything which points to government involvement here? Obviously, there was some difficulties with some Sunni individuals, but we're, of course, looking for persecution within the meaning of the definition. Correct. Well, there is evidence in the record, both of governmental participation. You have refugee camps that are set up within Bangladesh. The people are kept segregated from the rest of the individuals of Bangladesh. They're not provided passports or citizenship, and they're deprived of education, access to health care. One of the reports, and I can refer you to the card, one of the letters to the editor that was submitted points out that some of the camps have no water, no electricity, and the State Department Human Rights Report tells us that Bangladesh has no system set up for the processing of refugees, that some of them are permitted to stay, and that the Biharis have been there since 71, and they're still stuck in refugee camps. But is his family still there? His family is still there. So he's left his family there. Right. That's what bothers me most about this case. Right. What the record does show, and it's not a very well-developed record, and it's what makes it so unfortunate, correct? But what the record does show is that after his daughter was attacked, and he felt in great fear of what would happen to her, and, of course, the Human Rights Report supports his fear because women are abducted, they're taken forcibly into prostitution, and certainly the Biharis have been targeted and are not persons of power in Bangladesh. He left his daughter behind. Correct. No, no. But he testifies that he left them in a safe house. And then the judge says, well, how come you left them in a safe house and you couldn't be there? And what he testifies is that he couldn't afford to do that. I mean, he has to send money home to be able to support them in hiding in this house in Bangladesh. And I think that's where we come into the whole issue of the economic situation of the Biharis because we have Bangladesh, which the State Department reports as a very poor country, I mean, probably among the poorest in the world. And then you have a subclass of individuals, the Biharis, who are not permitted to integrate, are not permitted to use services, are subject to attack when they go out and try to do anything in society and obtain jobs. And he wasn't even able to get a legitimate passport to go out and seek work outside in Saudi Arabia. He had to get a false passport. So, I mean, they're really segregated and put into very dire circumstances. And the reality is that the government, there isn't sufficient support. Now, in the record, which the judge doesn't acknowledge, for example, there is his refugee card and the rations card. And so we can surmise, you know, from the setup is that if you're in the camp, you can obtain some amount of food. But if you needed to leave the camp, as he said his family had to put them in hiding, they would not have any form of any food or anything to eat unless he was able to provide them. And he's not able to go outside of the camp and obtain employment and support them. So he comes to this country and he applies for asylum. I think that given the extreme lack of access to employment, the extreme economic deprivation, and the fact that the government does not protect him from the actions of, you know, the population that attack them. They throw stones at them. They, you know, yank them out of the mosque. There's a letter from the Stranded Pakistani Organization, a letter to the editor, asking for help from the government because they're being severely attacked by, you know, ghouls from the outside. And so I think that in those conditions that it does amount to a persecution by the government and also persecution by individuals that the government does not control, doesn't wish to or does not control. Counsel, would you elaborate on your due process claim? Yes. The claim that your client was prevented from reasonably presenting the case. And yet as I read the record, it seemed to me that the immigration judge was simply asking clarifying questions and he never cut off questioning except through sustained objections. What is so fundamentally unfair about the hearing? I think, Your Honor, well, first of all, the most glaring question I have is, well, 589 is not even signed, which is, you know, a procedural question to me. Secondly, you have a lot of documents that he submitted in support of his case, but the judge doesn't even mark into the record. He doesn't say if they're admitted, they're not admitted, and he goes off on the issue of whether or not there's enough corroborating, that there's no corroborating evidence. I mean, he doesn't make a negative credibility finding per se. It's a little bit of a hodgepodge of decision-making thoughts from here and there. But you have substantial documents in the record identifying him as Bihari, you know, talking about the dire circumstances under which he lived in the refugee camp, discussing the death of his father. And there's absolutely no acknowledgement of those documents by the immigration judge in the course of the proceeding or in his decision. They're not even marked into evidence. So I would say that that would be, you know, quite a substantial violation of, you know, one's rights when the judge doesn't take any account whatsoever of the documents submitted by the alien. Thank you. Thank you. Thank you, Counsel. You may reserve your time. Thank you. We'll hear from the government. May it please the Court. My name is Kristen Edison, and I represent the Attorney General. Although Respondent is sympathetic to — Counsel, would you please speak up? Sure, I apologize, Your Honor. Although Respondent is sympathetic to the situation, the difficult situation in which Mr. Hussein lives, what the Court — or lived, excuse me. What the Court must decide is whether he has demonstrated that the record compels reversal of the immigration judge's decision. Counsel, I have a question about past persecution here. In the documentary attachments to Hussein's application, there's evidence of continuous death threats to which he was subject. Now, don't our cases basically compel finding that where there are death threats combined with physical attacks, the harassment arises at the level of past persecution? Your Honor, Respondent respectfully submits that, in addition, persecution must be on account of one of the protected grounds. And in this case, it's Respondent's position that Mr. Hussein did not demonstrate that he was harmed in the past on account of either his Baha'i ethnicity or his Sunni — excuse me, his Shiite Muslim religion. All right. Thank you. Respondent respectfully submits that substantial evidence supports the immigration judge's decision both on the finding regarding past persecution and on the finding regarding persecution in the future. Mr. Hussein's claim is basically premised on attempts by unknown individuals to extort money from him, and in one situation in 2000, his daughter — there was an incident where his daughter was — where unknown individuals attempted to abduct his daughter. Well, you know, assuming that there was attempted extortion, couldn't it be mixed motives that they're picking on him because of a protected ground, in addition to trying to extort money from him? Yes, Your Honor, that's possible, but in this case, the perpetrators never indicated any basis for believing that their targeting him was on account of his ethnicity. Indeed, Mr. Hussein refers to them in his testimony as the people who attempted to extort money from him, or the terrorists only. And in light of that, Respondent submits that there's no evidence that Mr. Hussein was harmed on account of one of the protected grounds, namely his ethnicity or religion. Counsel, do you want to say anything about the due process question? Yes, Your Honor. It's Respondent's position that Mr. Hussein did not exhaust that claim because he failed to raise it to the board. If we look at Mr. Hussein's brief to the board at pages 5 through 10 of the record, that claim was never raised, and Mr. Hussein was required to do that in order for the court to consider it. So in the absence of that, Mr. Hussein failed to exhaust his administrative remedies. Thank you, Counsel. Anything further? No, Your Honor. Just simply, for all of the reasons set forth in Respondent's brief and presented here, Respondent respectfully asks this court to deny the petition for review and affirm the decision of the immigration judge. Thank you, Counsel. Ms. Weiss, you have some reserved time if you wish. With respect to Mr. Hussein's claim that he was persecuted on account of his Bihari identity, I mean, he sets that forth in the asylum application, and the gist of his testimony, as well as the documents that he submitted state that he was in a refugee camp because he's a Bihari and that he was targeted by individuals who knew him to be a Bihari, and the documents that were submitted on his behalf also corroborate that, in fact, the Biharis are targeted by the thugs and the goons because they are Bihari and because they had supported Pakistan in the war in independence struggle of 1971, and also because of their religion. With respect to the issue of exhaustion, the Respondent on appeal did raise the question of the documents that were not considered by the immigration judge in the decision. So in that sense, the issue was preserved on appeal because one of the due process issues is whether all of the evidence was considered, and that issue was raised on appeal in the brief. Thank you, Counsel. The case just argued will be submitted for decision, and we will now hear argument in Newman v. The City of Orange.
judges: Dw Nelson, O'scannlain, Jones